**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| ANTOINETTE ALLEN *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 2:04-CV-001 PS |
| | ) | |
| MARY L. ELGIN, Individually and in her | ) | |
| official capacity as Trustee of Calumet | ) | |
| Township, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiffs in this § 1983 action are twenty-two individuals who used to work in the Office of the Trustee for Calumet Township. Plaintiffs allege that at the end of 2002 they were unlawfully discharged by the then-newly-elected Trustee of Calumet Township, Defendant Mary L. Elgin. According to Plaintiffs, Elgin fired them in retaliation for supporting her opponent in the primary election. Three motions are presently before the Court: 1) Elgin's motion for summary judgment [Docket No. 66]; 2) Elgin's motion to dismiss for failure to join an indispensable party [Docket No. 69]; and 3) Elgin's motion to dismiss two deceased plaintiffs [Docket No. 71].

Elgin's summary judgment motion has effectively not been responded to. We say "effectively" because the response from all twenty-two plaintiffs encompasses a sum total of three pages, and the plaintiffs' response neither cites to nor appends any evidence in support of their position. Because all Plaintiffs but one have failed to present the Court with any evidence to support their claims, the Court finds that no genuine issues of material fact exist and that Elgin

is entitled to summary judgment with respect to those Plaintiffs.  The Court finds that issues of

fact exist with respect to whether Plaintiff Cassandra Ford was terminated in violation of her

First Amendment rights, and therefore, summary judgment is denied with respect to Ford.

Defendant's motion to dismiss for failure to join an indispensable party, Calumet Township, is

denied because the suit against Elgin in her official capacity is effectively a suit against the

Township.  Defendant's motion to dismiss two deceased plaintiffs is denied as moot.

## I.  BACKGROUND

### A.      Factual Record

We recount the record evidence in the light most favorable to Plaintiffs and drawing all

reasonable inferences in their favor.  The operative complaint names twenty-two individuals as

Plaintiffs, all of whom held jobs at the Office of the Trustee of Calumet Township in Lake

County, Indiana in 2002.[1]  Defendant Mary Elgin is the Executive of Calumet Township and

serves as the township's Trustee.  Elgin has held that elected position since January 1, 2003.

Dozier T. Allen preceded Elgin as the township's Trustee.  Each Plaintiff worked in the

---

[1] The twenty-two plaintiffs in this action (with their position at the Trustee's Office in
parentheses) are:  Antoinette Allen (administrative assistant in human resources); James Bess
(custodian); Stephanie Davis (supervisor in internal affairs); Cassandra L. Ford (administrative
assistant in human resources); Brandy Gaskin (supervisor in workfare department); Lori Joyce
(assistant deputy in claims department); Anna M. Karras (chief finance deputy); Anthony F.
Karras (administrative assistant in finance department); Jeffery Karras (administrative assistant
in finance department); Theodore G. Karras (administrative assistant in finance department);
Denise Kendrick (supervisor in internal affairs); Arlene Lyons (public information officer);
Louise Neese (assistant deputy of the North Annex office); Cruzita Rivera (deputy in human
resources); Carolyn Shirley-Reed; Mildred Shannon (part-time building manager); Mechelle
Smith-Gordon (clerk); Kirkston Spann (assistant supervisor, civil department); Tan O. Stephens
(interoffice mail courier); Barbara J. Suarez (clerk); Edmund Vasquez (assistant deputy in
internal affairs); and Janice Ward (administrative assistant and case investigator).  [Docket No.
72.]

Trustee's Office in 2002 under Allen's direction.

Dozier Allen and Defendant Elgin belonged to the same political party and ran against each other in the 2002 primary election for Calumet Township Trustee.  Elgin defeated Allen, and she went on to win the general election in November 2002.  Shortly after the election, Elgin caused a letter to be sent to all Calumet Township supervisors in November 2002.  [Docket No. 72, Ex. 4]  Among other things, the letter stated that a new administration in Calumet Township would soon begin, stated that certain personnel changes might occur as a result, and invited supervisors to submit a resume and cover letter if they wanted to continue working in the new administration.  [*Id*.]

Plaintiffs allege that, the following month, Elgin discharged them from their respective positions.  Whether the Plaintiffs were actually dismissed is not altogether clear.  For instance, for Plaintiffs Cruzita Rivera and Anna M. Karras, the only evidence before this Court is Defendant Elgin's affidavit, which states that Rivera and Karras resigned from their positions or left voluntarily.  [Docket No. 72, Ex. 1 ¶¶ 6-7, 29-31 (henceforth, "Elgin Aff.")]   In any event, according to the complaint, Plaintiffs allege that they were discharged unlawfully for one or both of the following activities, both of which are protected by the First Amendment to the United States Constitution:  1) they supported the campaign of Dozier Allen, Elgin's opponent in the primary election; and/or 2) they spoke about matters of public concern relating to the workings of the Trustee's Office.  [Docket No. 59]  Plaintiffs' response to Defendant's motion for summary judgment fails to cite to any record evidence to support these claims.

### B.    Procedural History

Plaintiffs filed suit on January 6, 2004.  Their original complaint named Elgin as a

defendant along with three members of the Advisory Board of Calumet Township.  Plaintiffs'

claims against the board members have been dismissed with prejudice.  [Docket No. 32]  On

June 18, 2004, Plaintiffs filed an amended complaint adding two Plaintiffs.  On December 20,

2005, Plaintiffs filed a second amended complaint that corrected, but made no substantive

changes to, the amended complaint.  [Docket No. 59.]

     Plaintiffs had problems complying with Elgin's discovery requests in this case.  Elgin

served discovery requests in December 2004.  [Docket No. 38, Ex. 2.]  In July 2005, Elgin

moved to compel discovery responses from Plaintiffs after giving them several extensions to

respond.  [Docket No. 38.]  Plaintiffs did not file a brief in response to the motion.  On

September 16, 2005, Magistrate Judge Cherry granted the motion and ordered Plaintiffs to

respond to the outstanding discovery requests by October 5, 2005.  [Docket No. 42.]  Judge

Cherry declined to impose sanctions at that time but warned Plaintiffs that failure to comply with

his order could result in future sanctions.  [*Id.*]  Some of the Plaintiffs responded in part by Judge

Cherry's deadline, but the majority did nothing.  Instead, on the date that responses were due,

they boldly requested an additional 45 days to respond.  [Docket No. 43.]  Judge Cherry denied

the request.  [Docket No. 45.]  On October 19, 2005, Elgin moved for sanctions, including

dismissal of the case. [Docket No. 46.]  Plaintiffs did not respond to this motion either.

     This Court referred the motion to Judge Cherry for a report and recommendation under

28 U.S.C. § 636(b)(1)(B).  [Docket No. 49.]  Judge Cherry did not believe that dismissal was

warranted, but recommended that those Plaintiffs who failed to respond to the discovery requests

be precluded from supporting or opposing designated claims or defenses pertaining to the

discovery requests at issue, and that they be held jointly and severally liable for any expenses

incurred by Elgin in filing her motion for sanctions.  [Docket No. 50.]  Although Plaintiffs filed

objections to Judge Cherry's report and recommendations [Docket No. 51], this Court

determined that those objections lacked merit because they did not address Plaintiffs'

"extraordinary refusal to respond to Defendant's discovery requests over a period of ten months,

despite having received multiple, generous extensions from Defendant and being ordered to do

so by the Court."  [Docket No. 87.]  Accordingly, this Court adopted Judge Cherry's report and

recommendation in its entirety.  [*Id.*]

On March 6, 2006, Elgin filed her motion for summary judgment along with a brief and

an appendix of evidence in support of her motion.  On May 22, 2006, Plaintiffs filed a response

brief.  Brief is a good word for it.  As mentioned above, it is three pages long and does not attach

any evidence or cite to any of the evidence submitted by Elgin.  On June 15, 2006, Elgin filed

her reply and then filed some supplementary materials eight days later.

## II.  DISCUSSION

The gist of Plaintiffs' claim is that they supported Dozier Allen for Calumet Township

Trustee and when Elgin beat him in the primary election, they were unceremoniously shown the

door as payback.  Thus, Plaintiffs claim they were unlawfully discharged for protected policial

activity.  As discussed more completely below, Plaintiffs allege violations of both the First and

Fourteenth Amendment.[2]

---

[2] Plaintiffs also allude to a second theory under the First Amendment; that they were
fired for speaking out on matters of public concern.  However, as Defendant correctly points out
[Docket No. 72 at 10], none of the plaintiffs have raised any facts supporting this claim.  Indeed,
at least some of the Plaintiffs who were deposed denied ever speaking out on matters of public
concern.  [*See. e.g.,* Docket No. 72, Exs. 9, 20 23]   Therefore, to the extent that Plaintiffs
purport to make out a claim for retaliatory discharge in response to speech upon matters of
public concern, summary judgment is granted against all Plaintiffs.

A party is entitled to summary judgment when, viewing the pleadings and record evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 705-06 (7th Cir. 2006). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not "support its motion with affidavits or other similar materials *negating* the opponent's claim," *id.*, but rather, must only demonstrate the absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, Local Rule 56.1 requires any party opposing a motion for summary judgment to "serve and file any affidavits or other documentary material controverting the movant's position, together with a response that shall include in its text or appendix thereto a 'Statement of Genuine Issues' setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." L.R. 56.1. "A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004), citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)

6

("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions."); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.").

### A.      The Applicable First Amendment Law

The First Amendment protects public employees from suffering adverse job actions because of their political beliefs and associations.  *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 71 (1990); *Elrod v. Burns*, 427 U.S. 347, 359 (1976) ("The threat of dismissal for failure to provide [political] support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise."). "An exception to this general rule is permitted when the government employee responsible for the adverse action can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004), citing *Branti v. Finkel*, 445 U.S. 507, 517-18 (1980).

Courts typically refer to this exception as the "policymaking" or "confidential" employee exception because those terms fit the majority of situations where the exception applies. *Carlson*, 374 F.3d at 464.  The ultimate inquiry, however, is not whether the job fits the label of "policymaker" or "confidential," but whether party affiliation is an appropriate requirement for performing the job.  *See Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 755-56 (7th Cir. 2002).  Thus, "[w]hether party affiliation is an appropriate requirement for the job is determined by a functional test that examines the powers and duties inherent in the position."  *Carlson*, 374 F.3d at 464, citing *Hudson v. Burke*, 913 F.2d 427, 431 (7th Cir.1990).  This inquiry considers

both the historical treatment of the position and the actual work performed by the people who hold the position. *Carlson*, 374 F.3d at 464-65 (citations omitted); *Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir. 1997).

To survive summary judgment on a claim of politically motivated discharge, a plaintiff must demonstrate that her conduct was constitutionally protected, and that the protected conduct was a motivating factor in the decision to terminate her. *See Nelms v. Modisett*, 153 F.3d 815, 819 (7th Cir. 1998). The burden on the plaintiff is not insignificant; "A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981). If a plaintiff is able to demonstrate that his political affiliation was a motivating factor in his termination, the burden shifts to the defendant to show that she had a legitimate, non-political reason for terminating the plaintiff or that the firing was an appropriate political firing. *Nelms*, 153 F.3d at 818; *Selch v. Letts*, 5 F.3d 1040, 1042 (7th Cir. 1993).

### B.    Application to this Case

The Calumet Trustee's office is an immense bureaucracy with a multi-million dollar budget and a staff of approximately 200 full-time employees. *See* http://www.calumettwp-in.gov/hr.html. The township trustee is elected by the voters of the township, and the trustee is deemed to be the township executive. Ind. Code § 36-6-4-2(a). The duties and powers of the trustee are set forth by statute. *See* Ind. Code §§ 36-6-4-3 and 36-6-4-4. Under Indiana law, the trustee is empowered to "appoint and remove all deputies and other employees in his office." Ind. Code § 36-6-7-2. The employees of the Trustee's office are

8

employees at will, and thus she has the power to terminate them for any reason, or no reason at all, provided she does not violate the Constitution or anti-discrimination laws in the process.  *Cf. Indiana Alcohol Beverage Commission v. Gault*, 405 N.E.2d 585, 589 (Ind. App. 1980) ("It is well established in Indiana that if one's employment is at the will of a government agency, that person has no property interest in employment at a particular rank.") (citations omitted).

When Mary Elgin took over as the Calumet Township Trustee, in the exercise of her discretion, Ms. Elgin sent letters to the Township employees asking that they submit their resumes to her if they were interested in continuing to work for the Trustee's office.  Ms. Elgin decided to eliminate certain positions, and to replace some employees.  The Plaintiffs in this case were some of the employees who were replaced or whose positions were eliminated.

Elgin's summary judgment motion raises facts sufficient to show that twenty-one out of twenty-two Plaintiffs have not created an issue of fact regarding whether their discharge was politically motivated.  These Plaintiffs fail to adduce any evidence that political affiliation was a substantial or motivating factor in the decision to terminate them.  Although Plaintiffs' response brief contains a two-page "Statement of Contested Facts" [Docket No. 79], it does not include citations to any evidence (such as deposition transcripts, affidavits, or documentary evidence) nor does it cite to any of the evidence that Elgin submitted with her summary judgment motion.  Consequently, the Court has no testimony from the Plaintiffs, no data regarding Elgin's firing patterns, or any other evidence that would provide a jury with a reasonable basis to find in favor of these twenty-one Plaintiffs.  Thus, because they are able to do no more than restate the allegations in their pleadings, dismissal is appropriate.

However, as explained more fully below, even though Plaintiffs themselves made no

attempt to produce evidence in rebuttal, Elgin herself attached evidence showing that one plaintiff (Cassandra Ford) can, in fact, make a *prima facie* case.

In tackling a case involving 22 named plaintiffs, it is easiest to place the various Plaintiffs into categories. This is particularly true given the brevity of Plaintiffs' response to summary judgment, which has made the analysis of this case especially vexing for the Court. There are two Plaintiffs who are now deceased; there is another group of Plaintiffs who did not respond to discovery and were sanctioned as a result; there is a group of Plaintiffs who actually participated in the case and responded to discovery; and finally, there is one Plaintiff, Cassandra Ford, who needs individualized attention. We address each group in turn below.

### 1. Deceased Plaintiffs

Elgin argues that James Bess and Carolyn Shirley-Reed must be dismissed because they are deceased. Under Fed. R. Civ. P. 25(a), a motion for substitution of the proper parties[3] must be made within "90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion"; otherwise, "the action shall be dismissed as to the deceased party." *Id.* Elgin suggests that the 90-day period be triggered by her motion to dismiss Bess and Shirley-Reed, filed March 6, 2006. [Docket No. 71.] Even if that motion were not sufficient to suggest the deaths upon the record, the Court finds that Elgin's Reply, served on June 9, 2006 and filed on June 15, 2006, which attached the

---

[3] Substitution of the proper parties is only appropriate provided the claim is not extinguished by the original party's death. Fed. R. Civ. P. 25(a)(1). The Court does not address the issue of the survivability of the claims, since no motion for substitution has been made.

death certificates of Bess and Shirley-Reed, suffice as a suggestion of death.[4]  Since more than

90 days have elapsed since June 15 with no motion for substitution having been filed, dismissal

of Bess and Shirley-Reed is appropriate.  Additionally, dismissal is appropriate because they,

like all of the other Plaintiffs, have adduced no facts supporting the claim that their terminations

were politically motivated.

     **2.   Plaintiffs Precluded By Discovery Sanctions From Supporting Their Claims.**

     As discussed above, some of the Plaintiffs were sanctioned for their failure to respond to

discovery.  These Plaintiffs failed, over the course of 10 months, to provide any response to

Elgin's discovery requests, which sought the basis for Plaintiffs' action against her.  [Docket No.

50.]  When Elgin moved to compel responses, Plaintiffs filed no opposition.  And after Judge

Cherry ordered these Plaintiffs to respond, Plaintiffs waited until the day the responses were due

to file a motion for an extension, which was denied.  Elgin then moved for sanctions, which

Judge Cherry recommended be granted.  [Docket Nos. 50, 87.]  Only after Elgin moved for

sanctions did these Plaintiffs begin to cooperate with Defendant's requests for depositions, and

only after Judge Cherry issue his report and recommendations did Plaintiffs make any

objections.

[Docket No. 51.]   This Court determined that these eleventh-hour maneuvers were too little too

late.  [Docket No. 87.]  Consequently, this Court adopted in full Judge Cherry's report and

_____

     [4]  The Court further notes that on February 25, 2005, Elgin filed a motion for leave to file
the parties' Agreed Stipulation to Amend the Court's Scheduling Order Controlling Trial.
[Docket No. 33, Ex. 1.]  The Agreed Stipulation, signed by both plaintiffs' attorneys,
acknowledged that "[s]everal or more of the plaintiffs have died," and provided a deadline of
May 9, 2005 for Plaintiffs to seek leave of Court to join additional parties and amend the
pleadings.  [*Id.*]  Judge Cherry ultimately imposed the May 9, 2005 deadline.

recommendation that "Plaintiffs Antoinette Allen, Brandy Gaskin, Lori Joyce, Anna M. Karras, Anthony F. Karras, Jeffery Karras, Theodore Karras, Louise Neese, Cruzita Rivera, Mechelle Smith-Gordon, Kirkston Spann, Barbara J. Suarez, and Janice Ward not be permitted to support or oppose designated claims or defenses pertaining to the unresponded to discovery requests." [*Id.*]

The problem is that the discovery requests were so fundamental in nature that, as Elgin points out, the Court's Order granting those sanctions preclude consideration of virtually all evidence that could support these Plaintiffs' claims.  For example, Interrogatory No. 13 asked Plaintiffs to "[s]tate your personal knowledge of the facts, circumstances and events at and about the time of the occurrence(s) referred to in the Amended Complaint; in other words, describe the occurrence(s) in detail."  [Docket No. 46-2.]  Interrogatory No. 15 asked Plaintiffs to "[s]tate all facts and circumstances relied on by Plaintiff[s] to support [the] allegations" that their discharge from employment with Calumet Township "was improperly and illegally motivated."  [*Id.*] Interrogatory No. 18 required Plaintiffs to list the facts supporting their allegations that they were terminated for speaking out on matters of public concern, and Interrogatory No. 21 sought all evidence that Elgin was aware of Plaintiffs' support of Elgin's opponent, Dozier Allen.  [*Id.*]

Thus, Plaintiffs Allen, Gaskin,[5] Joyce, Anna M. Karras, Anthony F. Karras, Jeffery Karras, Theodore Karras, Neese, Rivera, Smith-Gordon, Spann, Suarez, and Ward are now precluded from adducing any evidence that their constitutional rights were violated, or that their

---

[5] Elgin also asserts that Gaskin's complaint has been withdrawn [Docket No. 72, Ex. 24], although the docket does not reflect that any formal withdrawal was ever made.  The Court also notes that Elgin has attached to her summary judgment motion an exhibit that refers to "the resignation of Mrs. Brandy Gaskin, Asst. Deputy of the Job Search Division." [*Id.*]

discharges were substantially motivated by their exercise of free speech.  Plaintiffs' three-page

Opposition Brief does not even mention any of these Plaintiffs by name, let alone point to any

evidence that would rebut summary judgment against them.  Thus, there is no issue of material

fact with respect to these plaintiffs, and summary judgment against these Plaintiffs is therefore

appropriate.[6]

### 3.   Plaintiffs Who Engaged In Discovery

The next group of Plaintiffs are those who actively participated in discovery in the case.

Elgin fired several employees when she took over as Trustee on January 1, 2003.  As discussed

above, under Indiana law, Elgin had the statutory right to appoint or remove any employee in the

Trustee's office.  *See* Ind. Code § 36-6-7-2.  Elgin exercised that right and therefore it is

incumbent upon the Plaintiffs to make out a *prima facie* case that their terminations were

motivated by political affiliation.  *Nelms*, 153 F.3d at 818.

In support of her motion for summary judgment, Elgin cites to deposition testimony and

interrogatory responses containing the admissions of Plaintiffs Stephanie Davis, Denise

Kendrick, Arlene Lyons, Mildred Shannon, Tan O. Stephens, and Edmund Vasquez that indicate

a lack of factual support for their allegations that their discharge was politically motivated.  In

the absence of evidence to the contrary – and there is none; remember, Plaintiffs did not offer

*any* evidence in their response to summary judgment – summary judgment must be granted.  In

other words, none of the Plaintiffs in this group have any evidence that their support for Dozier

---

[6]  Elgin asserts in her affidavit [Elgin Aff. ¶¶ 6-7, 29-31], that Anna M. Karras and
Cruzita Rivera resigned and/or retired from their jobs with Calumet Township.  Elgin also
asserts that their jobs were confidential and/or involved policymaking functions. [*Id. at* ¶¶ 8, 28.]
None of these assertions have been rebutted by the Plaintiff, and therefore, this presents an
independent ground for dismissing the claims of Anna M. Karras and Cruzita Rivera.

Allen was a motivating factor in the decision to dismiss them.  Thus, these plaintiffs have failed

to make a *prima facie* case under the First Amendment, and their cases must be dismissed as a

result.  Their individual admissions are discussed below.

### Stephanie Davis

Davis was the Supervisor of the Internal Investigations Department.  [Docket No. 72, Ex.

23]  Davis testified that she never had a conversation with Elgin, and offered nothing but

conjecture in support of her belief that Elgin "could possibly thought [*sic*] that maybe I would

not be loyal to her as it was said that we were loyal to Trustee Dozier Allen."  [*Id*.]

### Denise Kendrick

Kendrick was the Supervisor of the Internal Division or the Internal Investigation

Division.  [Elgin Aff. ¶ 60, Docket No. 72, Ex. 10.]  Kendrick admitted that she is "[u]nable to

pinpoint" any facts or circumstances supporting her contention that Elgin was aware of her

political activity on behalf of Allen.  [Docket No. 72, Ex. 11.]  She testified that she heard some

employees discuss that a list of those Calumet Township employees who had Dozier Allen

bumper stickers on their car was given to Elgin and Frazier, but she could not identify who said

that or when.  [Docket No. 72, Ex. 10.]  This unsubstantiated rumor is not sufficient to create a

genuine issue of fact about whether her discharge was politically motivated.

### Arlene Lyons

Lyons was an administrative assistant in the Public Information department.  [Docket No.

72, Ex. 16]  In her interrogatory responses and in the deposition testimony provided with Elgin's

summary judgment motion, Lyons offers no factual support for the allegation that her First

Amendment rights were violated or that Elgin or Frazier were aware of her activities on behalf of

Allen.  [Docket No. 72, Exs. 16-17.]

### Mildred Shannon

Shannon was a part-time building manager.  Her interrogatory responses indicate that she has no support for the allegation that her First Amendment rights were violated.  [Docket No. 72, Ex. 22.]  At deposition, she testified that Elgin knew she supported Dozier Allen because she saw her wearing an Allen campaign button.  [Docket No. 72, Ex. 20 at 9.]  However, Shannon admitted that the *only* basis for her allegation that her termination was politically motivated is that Elgin knew of her support for Allen.  [*Id.* at 11.]  Although relevant, Elgin's mere awareness of Shannon's support of Allen is insufficient by itself to show that it was this knowledge that motivated Elgin to fire Shannon.  Therefore, Shannon has failed to make a *prima facie* case of political discharge.

### Tan O. Stephens

Stephens was an administrative assistant who carried interoffice mail between township offices.  [Docket No. 72, Ex. 21.]  When asked at deposition what his basis was for claiming that he was discharged for political reasons, he answered:

A. Number 1, there was no other reason.

Q. Number 2?

A. Hearsay.

Q. Number 3?

A. None that I can think of right now.

[*Id.* at 9.]  He later testified that, like Kendrick, he heard office conversations about people passing information to Elgin regarding the identity of Allen's supporters in the Trustee's office,

but he himself acknowledged that these were "rumors," the source of which he could not

identify.  [*Id*. at 9-10.]  No reasonable jury could find for Stephens on this claim.

### Edmund Vasquez

Vasquez was the Assistant Deputy of the Internal Division. [Docket No. 72, Ex, 9.]  His

interrogatory responses consistently point to the letter of termination that he received as the only

basis for believing that his discharge was politically motivated.  [Docket No. 72, Ex. 8.]  He

testified that the only reason for believing that the letter was improper and illegally motivated

was that it was sent two weeks before Elgin's term began.  There is no basis for a jury to

conclude that Vasquez's firing was politically motivated.

### 4.  The Claims of Cassandra Ford

Cassandra Ford is the only Plaintiff who can raise a genuine issue of fact regarding

whether her termination was politically motivated.  Ford testified at deposition that she attended

Dozier Allen fund raisers, put up signs for Allen, and worked at the polls on his behalf on

Election Day in May, 2002.  [Docket No. 72, Ex. 19 at 21.]  In December of 2002, she received a

letter terminating her employment effective December 31, 2002, at the end of Dozier Allen's

term.  [*Id*. at 2.]  After receiving the letter, Ford contacted Donna Frazier, Elgin's Chief Deputy,

to find out why she was being fired.  [*Id*. at 16.]  Frazier returned her call on December 31, 2002

– the day before Elgin took office.  Ford testified that Frazier told her that her discharge "was a

political firing and they needed my position, so that's why I was discharged."[7]  [Docket No. 72,

---

[7]  Yet the Court notes that in response to Elgin's interrogatories, Ford answered that she "[c]annot specifically recall" the facts and circumstances she relies on in support of her allegations that she was terminated for "speaking out on matters of public concern," and said she was "[u]nable to pinpoint" any facts and circumstances supporting the contention that Elgin was aware of her activities on behalf of Dozier Allen.  [Docket No. 72, Ex. 19.]

Ex. 19 at 16.]  According to Ford, Frazier said, "This is a political job.  That's what happens in a political turnover when an old trustee loses and a new one comes in."  [*Id*. at 19.]  Further, Ford testified that Frazier explicitly told her that she was *not* being terminated because she lacked necessary qualifications:  "This is a political firing.  Your resume was good.  Mary Elgin also thought it was good.  We need your position, and that's why [you are] being terminated."  [*Id*. at 20.]

Although Frazier's comments were out-of-court statements offered to prove the truth of the matter asserted (that Ford was being fired for political reasons), they are admissible as admissions by a party-opponent.  The record evidence reflects that Frazier, the official responsible for carrying out Elgin's personnel decisions, was an "agent or servant [speaking about] a matter within the scope of the agency or employment, made during the existence of the relationship."  *See* Fed. R. Evid. 801(d)(2)(D); *see also Nekolny*, 653 F.2d at 1171 (upholding admission of statements made by defendant's agent to the effect that defendant fired plaintiff as a political reprisal).

The Court finds that Frazier's statement creates an issue of material fact about whether Ford's termination was motivated by political calculations.  Although Ford has not presented facts showing that Elgin or Frazier specifically knew of her political activities on behalf of Allen [*see* Docket No. 72, Ex. 19 at 3], we can infer from Frazier's comments that she and Elgin knew that Ford was not a political supporter of Elgin, and were substantially motivated by that fact.  Ford can make a case that her First Amendment rights were violated simply because her employment was conditioned on her being politically connected to Elgin.  *See Rutan*, 497 U.S. at 71 ("[C]onditioning continued public employment on an employee's having obtained support

from a particular political party violates the First Amendment because of 'the coercion of belief that necessarily flows from the knowledge that one must have a sponsor in the dominant party in order to retain one's job.'") (quoting *Branti*, 445 U.S. at 516).[8]

Elgin argues that the First Amendment does not protect any of the Plaintiffs, because they are all "confidential" or "policymaking" positions exempt from the First Amendment's protections. The Court need not reach this argument with respect to any Plaintiff but Ford, because she is the only one who can make out a *prima facie* case of politically motivated discharge.

The Court finds that an issue of fact exists regarding Ford's status as an exempt political employee. Ford was an administrative assistant to the Human Resources department. Elgin asserts that Ford's position

> requires the person holding the position to work in an intimate environment on a day-to-day, hour-to-hour basis with the Trustee. The job requires that the person holding the position demonstrate and effectuate loyalty to the Trustee; that the person garner the confidence of the Trustee, and maintain constant face-to-face or other modes of communication, contact with the Trustee.

[Elgin Aff. ¶ 63] But this description does nothing to establish that the position is politically sensitive or is one in which the holder "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny*, 653 F.2d at 1170 (7th Cir. 1981). Moreover, the Court

---

[8] The Court finds that because Frazier's comments did not explicitly extend to other firings, they do not, by themselves, raise an issue of material fact with respect to the other Plaintiffs. Particularly in light of Plaintiffs' abject failure to do any work in assembling facts opposing summary judgment, the Court is not inclined to piece together from Defendant's summary judgment exhibits all facts that could conceivably constitute circumstantial evidence in favor of Plaintiffs.

finds incredible on its face the suggestion that the position of HR secretary is confidential or policymaking in nature.  Further, Elgin's own summary judgment motion attaches Ford's deposition testimony and interrogatory responses, which directly contradicts Elgin's characterization.  Ford stated that 1) there were two supervisors between her and Trustee Allen [Docket No. 72, Ex. 18 at 4]; 2) her principal job responsibilities included ordering supplies; processing the time sheets on which other employees signed in and out; printing vendor and client checks; and answering phones [*Id.* at 3-5; Docket No. 72, Ex. 19].  Therefore, the Court cannot conclude, as a matter of law, that Elgin was entitled to fire Ford for political reasons.

Elgin has also asserted a defense of qualified immunity.  A public official is ordinarily entitled to qualified immunity where "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wrigley v. Greanias*, 842 F.2d 955, 957 (7th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To make this determination, courts look to "whether the legal norms governing the government official's behavior were clearly established at the time of the challenged actions." *Wrigley*, 842 F.2d at 955 (internal quotations omitted).  The Seventh Circuit has held that the case law has "made clear that an employee who performs primarily ministerial functions and who has little autonomy or discretion in performing his duties is not subject to patronage dismissal."  *Flenner*, 107 F.3d at 465 (reversing judgment on the pleadings on qualified immunity grounds because discharged employees appeared to fall within category of those occupying an "extremely 'low rung on the bureaucratic ladder'") (citation omitted).

Thus, because the law is clear that low-level employees with little discretion may not be dismissed on patronage grounds, Elgin would only be entitled to qualified immunity as a matter

of law it were beyond dispute that Ford's job did not fit in the category of low-level positions, but rather, lay in legally murkier waters.  But as explained above, the Court believes an issue of fact exists regarding whether Ford's position was, as Elgin alleges, one that was exempt from the First Amendment's protections.  Therefore, the Court cannot determine as a matter of law that Elgin's conduct did not violate clearly established constitutional rights of which a reasonable person would have known.

### C.  Fourteenth Amendment Claim

Plaintiffs also allege, with no substantiation or explanation, that their discharge violated the Fourteenth Amendment.  [Docket No. 59, ¶¶ 2, 12.]  Presumably, Plaintiffs seek relief under the Due Process Clause.[9]  The Seventh Circuit has set forth the standard for due process claims in the employment context as follows:  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Lohorn v. Michal*, 913 F.2d 327, 335 (7th Cir. 1990).  But property interests are created by state law, *id.*, and here, state law explicitly gives Elgin, as the executive of Calumet Township, the authority to "appoint and remove all deputies and other employees in [her] office."  Ind. Code § 36-6-7-2.

---

[9]  *See Elrod v. Burns*, 427 U.S. 347, 356-57 n. 10 (1976) ("'It is important to note that while it is the Fourteenth Amendment which bears directly upon the State it is the more specific limiting principles of the First Amendment that finally govern this case.'") (quoting *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 639 (1943)); *see also Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 699 (1996) (Scalia, J. dissenting) ("In fact, before we invented the First Amendment right not to be fired for political views, most litigation in this very field of government employment revolved around the Fourteenth Amendment's Due Process Clause and asked whether the firing had deprived a plaintiff of a 'property' interest without due process.").  It is not clear from Plaintiffs' Complaint whether Plaintiffs cite the Fourteenth Amendment to in order to "transmit[ ] the principles of the First Amendment," or "for its own sake."  *Barnette*, 319 U.S. at 639.

20

Plaintiffs offer no authority supporting the assertion of a property interest in their employment with Calumet Township, and therefore, summary judgment is granted against all Plaintiffs on their Fourteenth Amendment due process claims.

### D. Motion To Dismiss For Failure To Join Party Needed For Just Adjudication

Finally, Defendant moves to dismiss the action for failure to name Calumet Township as a Defendant.  In the alternative, Elgin asks the Court to order that Calumet Township be made a Defendant pursuant to Fed. R. Civ. P. 19.  Defendant does not explain why joinder of the township is necessary for just adjudication (*e.g.* that "in the person's absence complete relief cannot be accorded among those already parties," *see* Fed. R. Civ. P. 19(a)(1)).  Indeed, it is unclear why the township need be joined, given that a suit against an elected official in her official capacity is the equivalent of suing the municipality that she serves.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (citations omitted) (because city is liable for official actions of its mayor, there was no practical difference between suing city and suing mayor in his official capacity).  Therefore, Defendant's motion to dismiss is denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant Mary Elgin's Motion for Summary Judgment [Docket No. 66] is **GRANTED** with respect to Plaintiffs Antoinette Allen, James Bess, Stephanie Davis, Brandy Gaskin, Lori Joyce, Anna M. Karras, Anthony F. Karras, Jeffery Karras, Theodore G. Karras, Denise Kendrick, Arlene Lyons, Louise Neese, Cruzita Rivera,

Mildred Shannon, Mechelle Smith-Gordon, Kirkston Spann, Tan O. Stephens, Barbara J. Suarez, Edmund Vasquez, and Janice Ward.  Defendant's Motion for Summary Judgment is **DENIED** with respect to Cassandra Ford.  Defendant Elgin's motion to dismiss for failure to join an indispensable party [Docket No. 69] is **DENIED**.  Defendant's motion to dismiss two deceased plaintiffs [Docket No. 71], her motion to strike Plaintiffs' response to her motion to dismiss for failure to join an indispensable party [Docket No. 82], and her motion to supplement pleadings in support of summary judgment [Docket No. 88], are **DENIED** with prejudice as moot.  The Final Pretrial Conference/Settlement Conference shall be held on March 29, 2007 at 9:00 a.m.  The Trial Management Conference is set for April 26, 2007 at 11:00 a.m.  Trial is set for April 30, 2007 at 8:30 a.m.

       **SO ORDERED**.

ENTERED:  November 9, 2006

                      s/ Philip P. Simon
                      PHILIP P. SIMON, JUDGE
                      UNITED STATES DISTRICT COURT